1

2

3

4

5                                                  *E-FILED*

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

JAMES EDWARD WILLIAMS,          )   No. C 12-1116 RMW (PR)
12                               )
              Plaintiff,         )   ORDER GRANTING IN PART
13                               )   AND DENYING IN PART
                                 )   DEFENDANTS' MOTION FOR
14     vs.                       )   SUMMARY JUDGMENT;
                                 )   REFERRING CASE TO PRO SE
15  CASTILLO, et al.,            )   PRISONER SETTLEMENT
                                 )   PROGRAM
16            Defendants.        )
                                 )
17  _____)

18          Plaintiff, a state prisoner proceeding pro se, brought the instant civil rights complaint

19  pursuant to 42 U.S.C. § 1983, alleging that officials of Salinas Valley State Prison ("SVSP")

20  violated his Eighth Amendment rights by being deliberately indifferent to the lack of sanitation

21  in plaintiff's cell.  Finding that the complaint, liberally construed, stated a cognizable claim, the

22  court ordered service upon defendants.  Defendants moved for summary judgment.  Plaintiff has

23  filed an opposition, defendants have filed a reply, and plaintiff has filed a response to

24  defendants' reply.

25          After a review of the record, and for the reasons set forth below, the court GRANTS in

26

27

28
    Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
    Prisoner Settlement Program
    P:\PRO-SE\RMW\CR.12\Williams116msj.wpd

1   part and DENIES in part defendants' motion for summary judgment.[1]

2                                 **BACKGROUND**[2]

3   **I.      SVSP Inmate Toilets**

4          The toilets in SVSP cells do not have individual tanks to store water. (Mejia Decl. at ¶

5   5.) The toilets have a device that limits the number of times an inmate can flush water into the

6   toilet bowl in order to hinder an inmate's ability to flush contraband. (Id.) The toilet in Facility

7   D-1 can be "force flushed" if they are not working properly. (Id.) When a toilet is not

8   functioning properly, the inmate is given an opportunity to use toilet facilities in another part of

9   the prison. (Beattie Decl. at ¶ 4; Mejia Decl. at ¶ 7.)

10  **II.     Plaintiff's toilet**

11         On March 29, 2011, plaintiff was housed in Administrative Segregation ("Ad Seg"),

12  Facility D-1, cell 226, at SVSP. (Maiorino Decl. Ex. A AGO 008.) From May 29, 2011 through

13  June 30, 2011, plaintiff did not have a working toilet. (Compl. at 3.) During that time, plaintiff

14  was not given the opportunity to move to another cell, or offered the opportunity to use another

15  toilet except for one time when defendant Rodriguez offered plaintiff the opportunity to use

16  another toilet. (Id.) The defendants were aware that the toilet was filled with urine, feces, and

17  toilet paper, but refused to move plaintiff to another cell. (Id. and Pl. Decl. at ¶¶ 37-38.)

18         At some point, defendant Pato notified maintenance that plaintiff's toilet needed repair.

19  _____

20         [1] Plaintiff's motion to stay the motion for summary judgment, filed after the motion had
    already been fully briefed, is DENIED. Plaintiff requests a stay so that he may depose Dr. Miller
21  regarding her observations of plaintiff's toilet on June 14, 2011. Plaintiff's motion fails to
    comply with Federal Rule of Civil Procedure 56(d). Fed. R. Civ. P. 56(d). Further, plaintiff fails
22  to demonstrate that he has been diligent in his attempt to get this information from Dr. Miller
    prior to the submission of this motion for summary judgment. Finally, the court concludes that
23  the information plaintiff wishes to obtain from Dr. Miller's deposition would have no effect on
    the court's determination of defendants' motion for summary judgment. See Family Home and
24  Finance Center, Inc. v. Federal Home Loan Mortgage Corp., 525 F.3d 822, 827 (9th Cir. 2008)
    (Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form the
25  specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the
    sought-after facts are essential to oppose summary judgment.).
26

27         [2] The following facts are taken in the light most favorable to plaintiff.

28  Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
    Prisoner Settlement Program
    P:\PRO-SE\RMW\CR.12\Williams116msj.wpd
                                               2

1  (Pato Am. Decl. at ¶ 5.)

2      Defendant Ceballos also knew about plaintiff's toilet malfunction and knew that

3  maintenance had been contacted to repair the toilet.  (Ceballos Decl. at ¶ 5.)  Ceballos reset the

4  water supply to plaintiff's toilet several times as a temporary fix to plaintiff's toilet until

5  maintenance came to repair it.  (Id. at 6.)

6      Defendant Castillo was on vacation from June 1, 2011 through June 15, 2011.  (Castillo

7  Decl. at ¶ 5.)  When he returned from vacation, plaintiff told Castillo about his toilet not

8  working.  (Id.)  Castillo investigated, and learned that maintenance had already been notified.

9  (Id.)

10     Plaintiff alleges that defendant Rodriguez gave him access to an alternate toilet one time,

11  but denied him access on all other occasions.  (Pl. Decl. at ¶ 18.)  Rodriguez knew that the

12  maintenance crew had been notified of the malfunction.  (Rodriguez Decl. at ¶ 6.)

13     Defendant Machuca states that plaintiff told him that plaintiff's toilet was not working.

14  (Machuca Decl. at ¶ 5.)  Machuca told plaintiff that a work-order had been submitted to

15  maintenance to repair the toilet.  (Id.)

16     On June 14, 2011, Dr. M.A. Miller was conferencing with an inmate in the cell next to

17  plaintiff.  (Maiorino Decl., Ex. A AGO 038.)  Her notes indicate that she noticed a "maloderous

18  smell" coming from plaintiff's cell.  (Id.)  Plaintiff overheard her and asked to speak with her.

19  (Id.)  When Dr. Miller spoke with plaintiff, plaintiff told her about the plumbing issue he was

20  having, and told her that it had been ongoing for almost two weeks.  (Id.)  Plaintiff asked Dr.

21  Miller to report it to the plumber, and she indicated that she would because the smell made it

22  difficult for her to work.  (Id.)  Dr. Miller reported the situation to the building staff, who

23  informed her that they were aware of it already and had put in the work order.  (Id.)  Dr. Miller

24  also called "Plan Ops" to report the situation.  (Id.)

25     On June 21, 2011, maintenance came and unstopped plaintiff's sink and flushed

26  plaintiff's toilet, but said they would have to return because they did not have proper part to

27  permanently fix plaintiff's toilet.  (Pl. Decl. at ¶ 40.)  From June 21, 2011, through July 1, 2011,

28

1  plaintiff used a paper bag to defecate in, but continued to urinate in the broken toilet.  (Id. at ¶
2  41.)

3                                    **DISCUSSION**

4  **A.    Standard of Review**

5         Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
6  that there is "no genuine issue as to any material fact and that the moving party is entitled to
7  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect
8  the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute
9  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
10 verdict for the nonmoving party.  Id.

11        The party moving for summary judgment bears the initial burden of identifying those
12 portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
13 issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving
14 party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
15 reasonable trier of fact could find other than for the moving party.  But on an issue for which the
16 opposing party will have the burden of proof at trial, as is the case here, the moving party need
17 only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.
18 at 325.

19        Once the moving party meets its initial burden, the nonmoving party must go beyond the
20 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
21 genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over
22 material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
23 Liberty Lobby, Inc., 477 U.S. at 248.  It is not the task of the court to scour the record in search
24 of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The
25 nonmoving party has the burden of identifying, with reasonable particularity, the evidence that
26 precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the
27 moving party is entitled to judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

28
   Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
   Prisoner Settlement Program
   P:\PRO-SE\RMW\CR.12\Williams116msj.wpd

1   **B.   Plaintiff's Claim**

2        Plaintiff claims that defendants were deliberately indifferent to his sanitation needs

3   because his in-cell toilet was not working for 31 days.  Specifically, he alleges that he personally

4   showed each defendant that the toilet in his cell was full of feces, urine, and toilet paper, and was

5   not working.  Plaintiff also requested that he be moved to a cell with a working toilet, and each

6   defendant refused to do so.  Defendants argue that plaintiff was not deprived of a working toilet

7   for 31 days, and was not denied the use of toilet facilities.  Defendants further argue that

8   plaintiff's claim is not plausible; that defendants did not exhibit deliberate indifference because

9   plaintiff had extensive contact with medical and mental health staff; and that defendants are

10  entitled to qualified immunity.

11        With respect to defendants' arguments, defendants rely on their version of the facts to

12  support their position.  However, at this stage of the proceedings, the court must view the facts in

13  the light most favorable to plaintiff.  Thus, defendants' version of facts, when contradicted by

14  plaintiff, is not sufficient to sustain their motion for summary judgment.

15        The Constitution does not mandate comfortable prisons, but neither does it permit

16  inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner

17  receives in prison and the conditions under which he is confined are subject to scrutiny under the

18  Eighth Amendment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Amendment also

19  imposes duties on these officials, who must provide all prisoners with the basic necessities of life

20  such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer, 511

21  U.S. at 832.

22        A prison official violates the Eighth Amendment when two requirements are met: (1) the

23  deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official

24  possesses a sufficiently culpable state of mind.  Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294,

25  297-98 (1991).

26        In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy

27  the objective component of an Eighth Amendment claim, a court must consider the

28

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Williams116msj.wpd

1   circumstances, nature, and duration of the deprivation.  The more basic the need, the shorter the

2   time it can be withheld.  <u>See</u> <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000).  Substantial

3   deprivations of shelter, food, drinking water or sanitation for four days, for example, are

4   sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  <u>See</u> <u>id.</u> at

5   732-733; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1314 (9th Cir. 1995).

6         "Usually, a more offensive condition will be of constitutional significance when it exists

7   for even a short time, while a less offensive condition will be of constitutional significance only

8   when it has existed for a much longer time."  <u>Cockcroft v. Kirkland</u>, 548 F. Supp. 2d 767, 775

9   (N.D. Cal. 2008).  Long-term unsanitary conditions violate the Eighth Amendment, as do

10   non-working toilets.  <u>See, e.g.</u>, <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1041-42 (9th Cir. 2005)

11   (allegations of serious health hazards in disciplinary segregation yard for a period of nine

12   months, including toilets that did not work, sinks that were rusted and stagnant pools of water

13   infested with insects, and a lack of cold water even though the temperature in the prison yard

14   exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions).

15         "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute

16   an infliction of pain within the meaning of the Eighth Amendment."  <u>Anderson v. County of</u>

17   <u>Kern</u>, 45 F.3d 1301, 1314 (9th Cir. 1995).  Based on plaintiff's declaration, there remains a

18   genuine dispute of material fact as to whether plaintiff was housed in a cell with an inoperable

19   toilet that is filled with feces, urine, and toilet paper for 31 days, thereby exposing plaintiff to a

20   sanitation issue that rises to the level of a serious harm within the meaning of the Eighth

21   Amendment.  <u>See, e.g.</u>, <u>Johnson</u>, 217 F.3d at 723 (finding that receiving inedible food,

22   inadequate drinking water, and inadequate access to toilet facilities for four days was sufficient

23   to satisfy objective prong of Eighth Amendment); <u>DeSpain v. Uphoff</u>, 264 F.3d 965, 974 (10th

24   Cir. 2001) (recognizing that "exposure to human waste carries particular weight" when

25   analyzing whether condition is sufficiently serious and listing cases); <u>LaReau v. MacDougall</u>,

26   473 F.2d 974, 978 (2nd Cir. 1972) ("Causing a man to live, eat, and perhaps sleep in close

27   confines with his own human waste is too debasing and degrading to be permitted.").

28

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Williams116msj.wpd

1   Thus, the remaining question is whether there is a genuine issue of disputed fact

2   regarding whether defendants possessed a culpable state of mind.

3       1.      Defendants Ceja, Curry, Mejia, Tovar, and Beattie

4       Despite plaintiff's allegation that plaintiff informed each defendant that his toilet was

5   inoperable and requested a cell move, defendants Ceja, Curry, and Mejia dispute knowledge of

6   an inoperable toilet.  (Ceja Decl. at ¶ 4; Curry Decl. at ¶ 4; Mejia Decl. at ¶ 8.)  Defendant Tovar

7   does not admit or deny that he knew about plaintiff's inoperable toilet.  Defendant Beattie admits

8   that he knew plaintiff's toilet was malfunctioning, and offered to escort plaintiff to a working

9   toilet, but plaintiff refused.  (Beattie Decl. at ¶ 5.)  At the very least, viewing the facts in the light

10  most favorable to plaintiff, defendants Ceja, Curry, Mejia, Tovar, and Beattie knew about

11  plaintiff's inoperable toilet and refused to do anything about it.

12      In Farmer, the Supreme Court held that to act with deliberate indifference, an official

13  must have actual knowledge of an excessive risk to inmate health or safety and must deliberately

14  disregard that risk.  See 511 U.S. at 837.  In such cases, the plaintiff must show that the prison

15  officials had actual knowledge of the plaintiff's basic human needs and deliberately refused to

16  meet those needs.  Whether an official possessed such knowledge "is a question of fact subject to

17  demonstration in the usual ways, including inference from circumstantial evidence . . . ."  Id. at

18  842.  Because the parties dispute whether defendants had actual knowledge and deliberately

19  refused to do anything about it, summary judgment cannot be granted as to defendants Ceja,

20  Curry, Mejia, Tovar, and Beattie.

21      Defendants also argue that Ceja, Curry, Mejia, Tovar, and Beattie are entitled to qualified

22  immunity.  The defense of qualified immunity protects "government officials . . . from liability

23  for civil damages insofar as their conduct does not violate clearly established statutory or

24  constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

25  457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine:

26  (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2)

27  whether such right was clearly established such that it would be clear to a reasonable officer that

28

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
Prisoner Settlement Program
P:\PRO-SE\RMW\CR.12\Williams116msj.wpd

1  his conduct was unlawful in the situation he confronted.  See Pearson v. Callahan, 129 S. Ct.

2  808, 818 (2009).  The court may exercise its discretion in deciding which prong to address first,

3  in light of the particular circumstances of each case.  Id.

4      The qualified immunity inquiry is separate from the constitutional inquiry for a claim of

5  deliberate indifference under the Eight Amendment.  Estate of Ford v. Caden, 301 F.3d 1043,

6  1053 (9th Cir. 2002).  For a qualified immunity analysis, the court need not determine whether

7  the facts alleged show that defendants acted with deliberate indifference.  See Osolinski v. Kane,

8  92 F.3d 934, 936 (9th Cir. 1996).  Rather, the focus of review is the objective requirement.  Id. at

9  937.  The court need only review the relevant law to determine whether, in light of clearly

10  established principles at the time of the incident, the officials could have reasonably believed

11  their conduct was lawful.  See id. at 939.

12      A defendant must show that a reasonable officer could have believed that the conduct

13  was lawful in light of clearly established law and the information the officer possessed.  Galvin

14  v. Hay, 374 F.3d 739, 756-67 (9th Cir. 2004).  Whether a reasonable official could have believed

15  the action taken was lawful is a mixed question of law and fact: "It involves an objective test of

16  whether a reasonable official could have believed that his conduct was lawful in light of what he

17  knew and the action he took."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095,

18  1099 (9th Cir. 1995).  "If there are genuine issues of material fact in issue relating to the

19  historical facts of what the official knew or what he did, it is clear that these are questions of fact

20  for the jury to determine."  Id.

21      Here, the court cannot grant qualified immunity to Ceja, Curry, Mejia, Tovar, and Beattie

22  because there are genuine issues of material facts at issue regarding what they knew and what

23  they did.  Accordingly, defendants' motion for summary judgment as to Ceja, Curry, Mejia,

24  Tovar and Beattie is DENIED.

25      2.    Defendants Ceballos, Castillo, Pato, Machuca, and Rodriguez

26      Defendants Ceballos, Castillo, Pato, Machuca, and Rodriguez all admit that they knew at

27  some point that plaintiff's toilet was inoperable.  (Ceballos Decl. at ¶ 5; Castillo Decl. at ¶ 5;

28

Pato Am. Decl. at ¶ 5; Machuca Decl. at ¶ 5; Rodriguez Decl. at ¶ 6.)  None of the parties give any specific dates as to when they discovered or when plaintiff informed them of the inoperable toilet.  Nonetheless, the evidence is undisputed that Ceballow, Castillo, Pato, Machuca, and Rodriguez were aware of the situation, and were also aware that maintenance had been notified and a work-order submitted to rectify the situation.  (Ceballos Decl. at ¶ 5; Castillo Decl. at ¶ 5; Pato Am. Decl. at ¶ 5; Machuca Decl. at ¶ 5; Rodriguez Decl. at ¶ 6.)  In fact, Pato was the one who notified maintenance of the problem.  (Pato Decl. at ¶ 5.)  In addition, Ceballos reset the water supply to plaintiff's toilet several times as a temporary fix to plaintiff's toilet until maintenance came to repair it.  (Ceballos Decl. at ¶ 6.)  Rodriguez gave plaintiff access to an alternate toilet on one occasion.  (Pl. Decl. at ¶ 18.)

Viewing the facts in the light most favorable to plaintiff, these defendants knew that plaintiff's toilet was inoperable, and also knew that maintenance had been contacted to repair it. The evidence shows that, on June 21, 2011, maintenance came to fix the toilet, and although they may not have been able to fully fix the toilet, they did flush the toilet, thereby clearing it of the feces, urine, and toilet paper.  (Pl. Decl. at ¶ 40.)  Thus, at most, plaintiff's toilet was filled with human waste for a period of three weeks, from May 30, 2011, through June 21, 2011.  There is no evidence that any raw sewage overflowed from plaintiff's toilet, implying that plaintiff must have used some other receptacle in which to urinate and defecate at times.  There is also no evidence that plaintiff was unable to access other workable toilets when he needed to utilize a working toilet.

The undisputed evidence shows that Ceballos, Castillo, Pato, Machuca, and Rodriguez were aware of the inoperable toilet, discovered that the maintenance department was already aware of and working on rectifying the situation.  Pato notified the maintenance department. Castillo investigated the situation upon his return from vacation and learned that maintenance had already been contacted.  Ceballos reset the water supply several times.  Rodriguez gave plaintiff access to an alternate toilet.  Machuca informed plaintiff that a work-order had already been submitted to maintenance.

1   The requisite state of mind for deliberate indifference is one of subjective recklessness,
2   which entails more than ordinary lack of due care.  <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th
3   Cir. 2012) (citation and quotation marks omitted).  Deliberate indifference is shown where a
4   prison official "knows that inmates face a substantial risk of serious harm and disregards that
5   risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847.  Based on the
6   evidence, Ceballos, Castillo, Pato, Machuca, and Rodriguez may have been negligent in failing
7   to do more, but there is no evidence that they were deliberately indifferent in their responses to
8   plaintiff's inoperable toilet.  <u>See id.</u> at 844 ("prison officials who actually knew of a substantial
9   risk to inmate health or safety may be found free from liability if they responded reasonably to
10  the risk, even if the harm ultimately was not averted").

11          Accordingly, defendants' motion for summary judgment as to Ceballos, Castillo, Pato,
12  Machuca, and Rodriguez is GRANTED.  The court finds it unnecessary to address defendants'
13  argument regarding qualified immunity.

14  **C.      <u>Referral to Pro Se Prisoner Settlement Program</u>**

15          Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff
16  for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the
17  Pro Se Prisoner Settlement Program for settlement proceedings on the claim set forth above.
18  The proceedings will consist of one or more conferences as determined by Judge Vadas.  The
19  conferences shall be conducted with defendants, or the representative for defendants, attending
20  by videoconferencing if they so choose.  If these settlement proceedings do not resolve this
21  matter, the court will then set this matter for trial and consider a motion from plaintiff for
22  appointment of counsel.

23                                      **CONCLUSION**

24          1.      Defendants' motion to for summary judgment is GRANTED in part and DENIED
25  in part.  The motion is GRANTED as to defendants Ceballos, Castillo, Pato, Machuca, and
26  Rodriguez.  The motion is DENIED as to defendants Ceja, Curry, Mejia, Tovar, and Beattie..

27          2.      The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner

28  Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
    Prisoner Settlement Program
    P:\PRO-SE\RMW\CR.12\Williams116msj.wpd

1    Settlement Program for settlement proceedings on the remaining claim in this action; that is:

2    whether Doctor Williams exhibited deliberate indifference in his management of plaintiff's

3    chronic back pain.  The proceedings shall take place within **one-hundred twenty (120) days** of

4    the filing date of this order, or as soon as practicable.  Judge Vadas shall coordinate a time and

5    date for a settlement conference with all interested parties or their representatives and, within ten

6    (10) days after the conclusion of the settlement proceedings, file with the court a report regarding

7    the prisoner settlement proceedings.  If these settlement proceedings to do not resolve this

8    matter, plaintiff can file a renewed motion for appointment of counsel and the court will then set

9    this matter for trial.

10          3.     The clerk of the court shall mail a copy of the court file, including a copy of

11   this order, to Judge Vadas in Eureka, California.

12          4.     The instant case is STAYED pending the settlement conference

13   proceedings.  The clerk is directed to ADMINISTRATIVELY CLOSE this case until further

14   order of the court.

15          This order terminates docket numbers 56 and 86.

16          IT IS SO ORDERED.

17   DATED: _____                 _____
                                                 RONALD M. WHYTE
18                                               United States District Judge

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

JAMES E WILLIAMS,

               Plaintiff,

  v.

CASTILLO, et al,

               Defendant.

                Case Number: CV12-01116 RMW

                **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 23, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James Edward Williams V-54214
Kern Valley State Prison
D-5-113
P.O. Box 5104
Delano, CA 93216

Dated: October 23, 2013

                Richard W. Wieking, Clerk
                By: Jackie Lynn Garcia, Deputy Clerk